# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Sicilia, :
                 Petitioner :
          :
         v. : No. 747 C.D. 2021
          : SUBMITTED: November 19, 2021
API Roofers Advantage Program :
(Workers' Compensation Appeal :
Board), :
             Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
SENIOR JUDGE LEADBETTER            FILED: June 7, 2022

Claimant, Vincent Sicilia, petitions for review from an order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ). The WCJ granted the petition of Employer, API Roofers Advantage Program, to modify Claimant's compensation status to partially disabled pursuant to Section 306(a.3) of the Workers' Compensation Act.[2] For the reasons that follow, we reverse and remand for reinstatement of total disability benefits.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] Section 306(a.3) of Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act of October 24, 2018, P.L. 714, 77 P.S. § 511.3 (relating to medical examination and impairment rating).

The factual and procedural backdrop of this matter extends back more than twenty years. Claimant sustained work-related injuries on August 25, 1999, when he fell from a ladder on a worksite. Employer issued a notice of temporary compensation payable (NTCP), which subsequently converted to permanent, accepting Claimant's work injuries as a lumbar strain and a left knee contusion. Claimant subsequently petitioned to expand the scope of the accepted work-related injury description to include additional physical and psychological diagnoses. In 2003, the parties entered into a stipulation that was approved by an order of the WCJ assigned to that petition. The 2003 order expanded the accepted work-related injury description to include chronic pain syndrome and chronic adjustment disorder with anxiety and depression.

Since 2003, the parties have engaged in rounds of additional litigation, with the accepted injury description remaining the same. In 2011, after protracted litigation, another WCJ found that 2007 surgical procedures performed on Claimant's back were causally related to his accepted work-related injuries and the WCAB affirmed. In 2014, Claimant filed a penalty petition alleging a violation of the Act due to unpaid medical bills. The assigned WCJ circulated a decision and order accepting a stipulation of facts between the parties to resolve the penalty petition, which contained the same description of the accepted work-related injuries. That decision was the most recent prior to the instant round of litigation.

In October 2019, Employer filed the petition at issue here, seeking a modification of Claimant's indemnity benefits from total to partial as of August 1, 2019, based upon the Impairment Rating Evaluation (IRE) of Daisy Rodriguez,

2

M.D.[3]  Dr. Rodriguez's testimony and IRE Report indicates that Dr. Rodriguez examined Claimant on August 1, 2019.  Dr. Rodriguez found that Claimant was at maximum medical improvement as of September 27, 2017, and calculated his whole person impairment rating based upon the American Medical Association's Guides to Evaluation of Permanent Impairment, Sixth Edition (second printing, April 2009) (AMA Guides), as required by Section 306(a.3)(1) of the Act, 77 P.S. § 511.3(1). Based upon the accepted work-related injuries in the nature of lumbar strain, left knee contusion, chronic pain syndrome, and chronic adjustment disorder with anxiety and depression, Dr. Rodriguez assigned a whole person impairment rating of 23%.  The 23% impairment rating did not give separate weight to Claimant's chronic pain syndrome because the AMA Guides state that chronic pain syndrome is not given a score/weight when there is a separate diagnosis covering the pain generator.  Dr. Rodriguez felt that Claimant's other conditions covered the chronic pain syndrome, but if the chronic pain syndrome were added, regardless of the rules of the AMA Guides, then Claimant would have a whole person impairment rating of 25%.

The clinical summary portion of Dr. Rodriguez's report included diagnoses secondary to the 1999 work-related accident beyond those described in the prior decisions of the assigned WCJs: lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy.  Dr. Rodriguez qualified her rating, stating that her rating was constrained only to the diagnoses currently accepted via "the [NTCP], NCP [notice of compensation payable], mutual stipulation, and/or Court's decision" (IRE Report at 6, Reproduced Record "R.R." at 86a)—i.e., the lumbar strain, left knee

---

[3] Dr. Rodriguez is board certified in internal medicine and independent medical examinations and was designated by the Bureau of Workers' Compensation as the physician-evaluator for the Impairment Rating Evaluation (IRE) in this matter.

contusion, chronic pain syndrome, and chronic adjustment disorder with anxiety and depression. She further qualified her rating with the statement that "my examination of [Claimant], as well as my review of his records, has convinced me that the above listed diagnoses[, i.e., including the additional, non-accepted diagnoses] are, in fact, attributable to the work-related injuries." (*Id*.)

Employer asked Dr. Rodriguez for an addendum to the report including the whole person impairment rating based upon the diagnoses listed in the clinical summary. Dr. Rodriguez prepared such an Addendum, assigning a whole person impairment rating of 43% when not including chronic pain syndrome, and of 45% including chronic pain syndrome. Instead of using lumbar strain to calculate the lumbar diagnosis, she used the worst diagnosis known via the studies and reports, i.e., the lumbar protrusion or spondylolisthesis with lumbar radiculopathy, which resulted in the higher whole person impairment ratings. The difference between the ratings in the IRE Report and the Addendum is significant because the former is below the threshold impairment rating of 35% or greater, which establishes the presumption for continuing total disability, while the latter is above the threshold. *See* Section 306(a.3)(2), (4), (5), and (7) of the Act, 77 P.S. § 511.3(2), (4), (5), and (7).

The present WCJ found Dr. Rodriguez credible with respect to the whole person impairment rating of 25%. The WCJ found Dr. Rodriguez's testimony that the 1999 work-related injuries included additional diagnoses was not "credible," (WCJ Decision at Finding of Fact 10), based upon the description of injuries included in the decisions of prior WCJs and the WCAB. The WCJ thus concluded that Employer had met its burden of proving that by August 1, 2019, Claimant had received in excess of 104 weeks of temporary total disability benefits, was at

4

maximum medical improvement, and had a whole person impairment rating of less than 35% according to the AMA Guides, the threshold for conversion to partial disability benefits under Section 306(a.3)(2) of the Act, 77 P.S. § 511.3(2). Based upon this, the WCJ ordered that Claimant's benefits be modified to partial disability benefits, at the temporary total disability rate, beginning August 1, 2019. Claimant appealed the WCJ's decision and order to the WCAB. Claimant argued that the WCJ erred in failing to consider reasonably related conditions not formally added to the NCP for which he underwent back surgeries that were previously determined to be Employer's responsibility, relying upon *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017) (*Duffey II*), in which our Supreme Court held that under the IRE process, an IRE physician-evaluator must consider not only the injuries listed on the NCP but any additional injuries that subsequently arose and were known at the time of the IRE but had not been formally added to the injury description.

The WCAB rejected this argument, noting that the WCJ had discredited the testimony of Dr. Rodriguez purporting to establish that the work injuries included additional diagnoses beyond those delineated in extensive previous adjudications, reasoning that the rendering of credibility determinations was within the domain of the WCJ. The WCAB further noted that in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019), *aff'd*, (Pa., No. 88 MAP 2019, filed August 18, 2020), we explained that per *Duffey II*, a physician must apply professional judgment to assess conditions that could be fairly attributable to a compensable injury and failure to exercise that judgment may render the IRE invalid. The WCAB concluded that Dr. Rodriguez did that in her initial IRE Report and

5

related testimony, differentiating the accepted injuries from those additional diagnoses she found to be related to the work injuries.

On appeal, Claimant asserts that *Duffey II* controls, essentially disputing the WCJ's determination that the prior injury descriptions in previous WCJ decisions dictate what may be considered in the IRE.

In *Duffey II*, the NCP indicated that the claimant's injury type was "electrical burn" to both hands and the description of the injury was "stripping some electrical wire." 152 A.3d at 985. The employer requested an IRE pursuant to the then-applicable law,[4] describing the underlying compensable injury as "bilateral hands-nerve and joint pain." *Id.* The physician-evaluator, a specialist in physical medicine and rehabilitation, assigned a whole body impairment rating of 6%, below the then-pertaining 50% threshold for modification to partial disability. *Id.* at 986. The claimant filed a review petition attacking the validity of the IRE, asserting that the physician-evaluator had failed to rate the full range of work-related injuries, since the claimant suffered from adjustment disorder with depressed mood and chronic post-traumatic stress disorder as a result of his work accident. *Id.* The physician-evaluator did not account for the alleged mental conditions, explaining that he was not a psychiatrist and did not have the skills to do that type of assessment

---

[4] The version of the IRE legislation in effect at the time of *Duffey II*, Section 306(a.2) of the Act, added by Act of June 24, 1996, P.L. 350, repealed by Act of October 29, 2018, P.L. 714, was stricken in its entirety in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*) [striking Section 306(a.2) as unconstitutional delegation of legislative authority by reference to "most recent edition" of AMA Guides]. The legislative and jurisprudential history of the IRE legislation are described at some length in *Pennsylvania AFL-CIO*, 219 A.3d at 309-12. The IRE provisions of Section 306(a.2) were substantially reenacted by Section 306(a.3), which cured the constitutional infirmity of the former legislation by specifying the version of the AMA Guides to be used in IRE evaluations and lowering the threshold for establishing the presumption of continuing total disability to 35% from 50% in Section 306(a.2).

and was "specifically asked to assess his electrical burn injuries," which he did. *Id.* at 987. Claimant presented testimony of his own experts to contradict that of the physician-evaluator, which the WCJ in the case found credible, rejecting the employer's conflicting evidence and determining the physician-evaluator's IRE to be invalid. *Id.* The WCJ further directed that the claimant's psychological conditions be added to the NCP. *Id.*

On appeal, the WCAB reversed the decision to invalidate the IRE, finding that a physician-evaluator may limit an IRE according to the accepted injuries as reflected in the NCP, noting that the claimant had not sought to amend the NCP in a timely fashion, but instead waited until almost six months after the IRE was performed. *Id.* This Court affirmed the WCAB's order, *see Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 119 A.3d 445 (Pa. Cmwlth. 2015), *reversed by Duffey II*, finding that the NCP established the description of the work injury.

Our Supreme Court reversed, noting that the IRE physician-evaluator is explicitly invested with the obligation to determine "the degree of impairment *due to* the compensable injury," *Duffey II*, 152 A.3d at 989 (quoting former law[5]; emphasis added by *Duffey II*). The Court stated that "a physician-evaluator must consider and determine causality in terms of whether any particular impairment is 'due to' the compensable injury. Moreover, the required evaluation is of 'the percentage of permanent impairment *of the whole body* resulting from the compensable injury.'" *Id.* [quoting former Section 306(a.2)(8)(ii) (emphasis added by *Duffey II*) (citation omitted)]. It agreed with this Court that the NCP should define "compensable injury" for purposes of this inquiry but stated that under former

---

[5] Section 306(a.2) of the Act, added by Act of June 24, 1996, P.L. 350, repealed by Act of October 29, 2018, P.L. 714.

7

Section 306(a.2) and the AMA Guides, "the physician-evaluator must exercise professional judgment to render appropriate decisions concerning both causality and apportionment." *Id.* Further, while the AMA Guides refer to an "event" rather than an "injury," permitting the physician-evaluator to attribute a particular condition to the event in which the claimant was injured rather than the injury itself, "a physician-evaluator simply may not entirely disavow any and all responsibility to consider causality relative to a given condition." *Id.*

Employer responds by arguing that the doctrine of *res judicata* controls here, and that Claimant is therefore bound by the stipulated injuries incorporated in the January 2003 decision and subsequent decisions. It notes that while Claimant succeeded in obtaining payment of medical bills for lower back surgeries by decisions issued in December 2011, he did not succeed in amending or expanding the injury description. Next, Employer argues that the WCJ in the instant matter was within her discretion to reject the expanded scope of the lumbar injuries given the extensive case background. Employer states that the WCJ was charged with assessing credibility and was persuaded by Dr. Rodriguez's testimony as it pertains to the injuries established previously but rejected Dr. Rodriguez's alternate rating based upon an expansion of the lumbar injury. Employer further attempts to distinguish *Duffey II* on the ground that the procedural posture in this case differs, in that extensive litigation in this matter has established the compensable injuries, whereas a review petition seeking to modify the injury description was not filed until after the IRE was completed in *Duffey II*.

Employer's arguments, and the WCAB's holdings, boil down to an assertion that the decision of a WCJ describing the injuries controls the IRE process. However, Employer, and the WCAB and WCJ, did not cite (and we cannot find)

8

authority that such decisions have preclusive effect on the IRE physician-evaluator. To the contrary, Section 306(a.3)(1)—as elaborated in *Duffey II*—places a great deal of discretion in the physician-evaluator to determine what diagnoses are "due to" a work-related injury, outside the ordinary modification process.[6]

Dr. Rodriguez's initial IRE Report and related testimony indicate that she felt her rating was constrained by the currently accepted diagnoses, thereby excluding lumbar protrusion or spondylolisthesis with lumbar radiculopathy, which her "examination . . . as well as [her] review of his records, has convinced [her] . . . are attributable to the work-related injuries of 8/25/1999." (IRE Report at 6, R.R. at 86a.) Thus, Dr. Rodriguez misapprehended her responsibility as a physician-evaluator in her initial calculation of Claimant's whole person impairment rating. It seems that this was likely understood by Employer's counsel, who requested the Addendum that calculated the whole person impairment rating with the initially omitted diagnoses. At all events, although the WCJ had authority as factfinder to

---

[6] Further, an earlier injury description is subject to correction by the WCJ at any time:

> A [WCJ] . . . may, at any time, modify . . . a [NCP], an original or supplemental agreement or an award of the [Department of Labor and Industry] or its [WCJ], upon petition filed by either party with the department, upon proof that the disability of an injured employe[e] has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

Section 413(a) of the Act, 77 P.S. § 771. While no petition or other request for such change was made in this case, it is disingenuous to assert that an injury description in one WCJ's decision, or a string of such decisions, binds subsequent WCJs later in the history of a claim.

Even when an injury description is not formally amended, a diagnosis may become an accepted injury if a WCJ finds it was caused or aggravated by the work injury. *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213 (Pa. Cmwlth. 2008).

make credibility determinations, such determinations must be based upon competent evidence. Section 422 of the Act provides in pertinent part as follows:

> [A]ll findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (relating to rules of evidence). The WCJ's reasoning for rejecting Dr. Rodriguez's testimony concerning the additional diagnoses, and the higher rating resulting from such inclusion, was not, in fact, a credibility determination based on evaluation of the evidence, but rather a misapprehension of the discretion accorded an IRE physician-evaluator. The only reason proffered for discrediting the additional diagnoses was that they had not been previously found by other WCJs. Simply put, the WCJ erred as a matter of law in constraining the IRE review solely to the earlier accepted descriptions of Claimant's work injuries.

10

Accordingly, we reverse the order of the WCAB and remand for reinstatement of total disability benefits.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

Judge Fizzano Cannon did not participate in the decision for this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Sicilia,                  :
              Petitioner       :
                                  :
         v.                    :    No. 747 C.D. 2021
                                  :
API Roofers Advantage Program    :
(Workers' Compensation Appeal    :
Board),                                :
             Respondent     :

# O R D E R

AND NOW, this 7th day of June, 2022, the order of the Workers' Compensation Appeal Board is REVERSED, and the matter is REMANDED for reinstatement of total disability benefits. Jurisdiction is relinquished.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Sicilia, : 
              Petitioner :
           v. :
              : No. 747 C.D. 2021
API Roofers Advantage Program : Submitted: November 19, 2021
(Workers' Compensation Appeal :
Board), :
             Respondent :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

DISSENTING OPINION
BY JUDGE LEAVITT                FILED: June 7, 2022


The Workers' Compensation Appeal Board (Board) affirmed the decision of the Workers' Compensation Judge (WCJ) that Vincent Sicilia (Claimant) had a "whole[-]person impairment rating of less than 35% warranting a modification in status." Board Adjudication at 7. In doing so, the Board observed that the WCJ "rejected the testimony from Dr. Rodriguez purporting to establish that the work injury included any additional conditions," and explained that "[r]endering credibility determinations is the quintessential function of the factfinder." *Id.* Because the majority rejects two express credibility determinations of the WCJ, I respectfully dissent.

The majority concludes that the WCJ discredited Dr. Rodriguez's testimony under a mistaken belief that Dr. Rodriguez was not permitted to consider additional diagnoses as related to Claimant's work injuries. However, the WCJ did not so explain, or limit, her credibility determinations. In her first credibility determination, the WCJ stated that "[t]he testimony of Dr. Rodriguez is credible that

she examined Claimant on August 1, 2019 . . . [and determined Claimant] has a whole[-]person impairment rating of 25% based upon the Sixth Edition, second printing, of the AMA Guides to Evaluation of Permanent Impairment." WCJ Decision 8/24/2020, Finding of Fact (F.F. __) No. 10. In her second credibility determination, the WCJ stated that Dr. Rodriguez's testimony that "[C]laimant's August 25, 1999[,] work[-]related injury includes additional diagnoses *is not accepted as credible*." *Id*. (emphasis added). In support of this latter credibility determination, the WCJ observed that Claimant's injury "ha[s] been described in numerous decisions, including the most recent decision of [WCJ] Melcher in which the injury was described as a lumbar strain, left knee contusion, chronic pain syndrome and chronic adjustment disorder with anxiety and depression." *Id*. At no point did the WCJ state that she was constrained in either credibility determination by these prior decisions.

In short, while Dr. Rodriguez may have believed Claimant was experiencing symptoms related to his work injury, the WCJ rejected this belief. The WCJ's express discrediting of Dr. Rodriguez's testimony supports her ultimate decision to grant API Roofers Advantage Program's (Employer) modification petition. *See Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Pilvalis)*, 597 A.2d 294, 296 (Pa. Cmwlth. 1991) ("Although generally a [WCJ] may disregard the testimony of any witness, even though the testimony is uncontradicted, he does not have the discretion to capriciously disregard competent evidence without a reasonable explanation *or without specifically discrediting it*.") (internal citations omitted and emphasis added).

The well-established nature of Claimant's work injury, developed through extensive litigation, may have factored into the WCJ's credibility decision.

Nevertheless, the WCJ reviewed the record, including Dr. Rodriguez's testimony detailing her examination of Claimant and her review of Claimant's medical history, and then *specifically credited* Dr. Rodriguez's testimony to the extent it supported a finding Claimant has a whole-body impairment of 25%. *Ipso facto*, the WCJ *specifically discredited* Dr. Rodriguez's contrary testimony.

In *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017) (*Duffey II*), our Supreme Court placed additional requirements on the Impairment Rating Evaluation (IRE). In light of the matter *sub judice*, *Duffey II* should be reconsidered.

In his dissent to *Duffey II*, Justice Wecht observed:

> Under the [m]ajority's approach, claimants in Duffey's position need not file a petition to amend the [Notice of Compensation Payable (NCP)] at all. This is so, the [m]ajority reasons, because impairment-rating physicians have a duty to identify any injuries that are "fairly attributable" to the claimant's compensable injury . . . . [T]o my knowledge, no judicial or administrative tribunal expressed such an understanding of [s]ubsection 306(a.2) [of the Workers' Compensation Act (Act)][1] throughout the two decades since [the 1996 amendments to the Act] became effective . . . . With today's decision, the [m]ajority by judicial fiat converts the statute's impairment-rating process into one in

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. §511.2. At the time of the decision in *Duffey II*, former subsection 306(a.2) of the Act provided for modification of a claimant's indemnity benefits, from total to partial disability, when a claimant was shown to have a whole-body impairment rating of less than 50%. Subsequently, our Supreme Court struck down the IRE provision of subsection 306(a.2) as an unconstitutional delegation of legislative authority (*see Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*)), and the General Assembly passed, and the Governor signed into law, the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), which repealed former subsection 306(a.2) and added new subsection 306(a.3) to the Act, 77 P.S. §511.3. Among other things, this new subsection provides for modification of a claimant's indemnity benefits, from total to partial disability, when a claimant is shown to have a whole-body impairment rating of less than 35%.

> which physicians must scrutinize each "condition" hinted at by a claimant, and then determine which, if any, are "fairly attributable" to the compensable injury.

*Duffey II*, 152 A.3d at 998-99 (Wecht, J., dissenting). The dissent presciently observed that "[t]he likely result will be heightened confusion and increased litigation." *Duffey II*, 152 A.3d at 1003-04.

*Duffey II* has muddled the law in this area. It takes the IRE into issues of liability and causation for a work injury when the sole purpose of an IRE is to determine the claimant's disability status after maximum medical improvement from the adjudicated work-related injury. *See* Section 306(a.3)(8)(i) of the Act, which defines "impairment" as "anatomic or functional abnormality or loss that results from the *compensable injury* and is reasonably presumed to be permanent." 77 P.S. §511.3(8)(i) (emphasis added). *See also Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corporation)*, 954 A.2d 776, 780 (Pa. Cmwlth. 2008) (maximum medical improvement occurs when the work injury has "become static prior to undergoing such an examination"). In short, the adjudicated injury must be static before an IRE can be done.

I would affirm the Board and the WCJ, which followed *Duffey II.* In the end, the WCJ simply rejected Dr. Rodriguez's opinion that Claimant's other symptoms were attributable to his work injury. Accordingly, there is no credited evidence to support a finding that Claimant has a whole-body impairment greater than 35%.

_____
MARY HANNAH LEAVITT, President Judge Emerita